IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EARL VANTREASE                    )
                                  )
v.                                )    No. 3:06-0538
                                  )    Judge Echols/Bryant
CHRIS LUNA, et al.                )


To:  The Honorable Robert L. Echols, Senior Judge


**REPORT AND RECOMMENDATION**

        Currently pending in this civil action is a renewed

motion for summary judgment filed by defendants Chris Luna and

Titus Kelley (Docket Entry No. 30).  For the reasons given below,

the Magistrate Judge recommends that this motion be GRANTED in

part, that plaintiff's federal constitutional claims be DISMISSED

with prejudice, and that the remaining state law claims be

REMANDED to the Circuit Court for Wilson County, Tennessee,

pursuant to 28 U.S.C. § 1441(c).


                    I.  INTRODUCTION

        Plaintiff originally filed a *pro se* complaint and

motion to proceed *in forma pauperis* in the Circuit Court for

Wilson County, Tennessee, on April 24, 2006, claiming violation

of his rights under the U.S. Constitution and other state law

violations (Docket Entry No. 1, Exh. A).  On May 25, 2006,

defendants removed the case to this Court (Docket Entry No. 1).

1

By order entered June 7, 2006, the District Judge referred the case to the Magistrate Judge for consideration of pretrial matters and report and recommendation on any dispositive motions (Docket Entry No. 3). On August 8, 2006, defendants Luna and Kelley filed a motion for summary judgment (Docket Entry No. 11), to which plaintiff responded by memorandum (Docket Entry No. 19) and declaration under penalty of perjury (Docket Entry No. 20). Prior to making this response, however, plaintiff moved to amend his complaint (Docket Entry No. 17), and upon the granting of that unopposed motion (Docket Entry No. 22), plaintiff's amended complaint was filed on September 19, 2006 (Docket Entry No. 23). Defendants thereafter requested that their summary judgment motion be held in abeyance (Docket Entry No. 25), pending their review of the allegations of plaintiff's amended complaint. After filing their answer to plaintiff's amended complaint on September 29, 2006 (Docket Entry No. 29), defendants renewed their motion for summary judgment and supplemented their supporting affidavit and statement of undisputed facts on November 10, 2006 (Docket Entry Nos. 30-33). Plaintiff did not file any response to defendants' renewed motion.

## II. UNDISPUTED FACTS

On April 22, 2005, defendant Luna, a Patrol Officer with the Lebanon Police Department in Lebanon, Tennessee,

2

effected a traffic stop of the car driven by plaintiff.  During
the course of the stop, plaintiff, who is black, accused
defendant Luna, who is white, of targeting plaintiff for
harassment based on his race.  Defendant Luna radioed for backup
on the stop, and defendant Kelly, Luna's sergeant, arrived
shortly thereafter.  The stop resulted in defendant Luna issuing
a citation to plaintiff for violation of the Tennessee seatbelt
law, lack of registration, and lack of proof of insurance.
However, plaintiff refused to sign the citation, whereupon
defendants took him into custody.  Defendant Luna transported
plaintiff to the Wilson County Jail, where he was booked by the
Wilson County Sheriff's Department.  The Wilson County Judicial
Commissioner on duty issued a warrant for plaintiff's arrest on
the charge of "refusal to sign citation," in violation of Tenn.
Code Ann. § 7-63-104, which warrant was signed by defendant Luna
as the executing officer.  The Commissioner ordered that
plaintiff be "[held] for judge," and declined to set bond.  A few
hours later, the next shift Commissioner overrode the initial
decision to hold plaintiff in custody until a judge could review
the case, and released plaintiff from custody on a one thousand
dollar appearance bond.

On July 12, 2005, the date prescribed on the arrest
warrant as the date of plaintiff's initial appearance on the
charge of arrest, a judge of the Wilson County General Sessions

Court dismissed the warrant as defective for failing to charge plaintiff with a criminal offense. Five days prior, on July 7, 2005, the Lebanon City Court had proceeded against plaintiff, in his absence, on the seatbelt, registration, and proof of insurance violations charged in the citation written by defendant Luna; in view of plaintiff's failure to appear and defend, fines were assessed for each of these violations.

### III.  DISCUSSION

#### A.  <u>Summary Judgment Standards</u>

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  The moving party bears the initial burden of showing that no genuine issues of material fact remain in dispute.  <u>Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich</u>, 959 F.2d 590, 592 (6th Cir. 1992).

"When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is

4

a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see also</u> <u>Nat'l Solid Wastes Mgmt. Ass'n</u>, 959 F.2d at 592.

In reviewing the record, all justifiable inferences should be drawn in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 577 (1986).

## B. <u>The Pleadings</u>

Plaintiff's complaint before the Wilson County Circuit Court is almost entirely concerned with his allegations of wrongful arrest, false imprisonment, and malicious prosecution/abuse of process, all stemming from his mere refusal to sign the citation for driving without a seatbelt (which he alleges to be a false charge based on the General Sessions Court's ruling that the arrest warrant citing his refusal to sign failed to charge plaintiff with a crime). Notably, there is only one reference to perceived racial discrimination in the original complaint, as reflected in the following allegations related to the initial stop of plaintiff's vehicle:

> [Plaintiff] was driving his vehicle near McGregor St. when defendant Lunar pulled him over for allegedly not wearing a seatbelt. Plaintiff denied this allegation and indicated filing a lawsuit against defendant Lunar for harassment and stereotyping him because of his race[.] Then, when defendant Kelly arrived, defendant Lunar wrote out the seatbelt citation and told plaintiff to sign it. But when plaintiff refused to sign his name on the citation, defendant Lunar literally threatened to have him imprisoned if he didn't.

5

(Docket Entry No. 1, Exh. A at 8, ¶¶ 2-3)

    After being served with defendants' motion for summary judgment, which asserts the validity of the grounds for both the initial traffic stop and the subsequent arrest, plaintiff filed a motion to amend his complaint (Docket Entry No. 17), in which he purported to seek leave to sue defendants in their official capacities since they acted within the course and scope of their employment at all relevant times, and wielded authority that is exclusive to law enforcement officers when conducting the traffic stop at issue. Plaintiff also sought leave to add a defendant (the unnamed Wilson County Judicial Commissioner on duty at the time of plaintiff's booking) and to add claims of further Fourth Amendment violations and the theft by defendant Luna of $9,500 in cash, allegedly found on the front seat of plaintiff's car and seized after plaintiff was in custody. Upon defendants' failure to object to the proposed amendment, the undersigned granted leave to amend on the day after the response deadline passed (Docket Entry No. 22).

    In plaintiff's amended complaint (Docket Entry No. 23), he alleged for the first time the following circumstances following defendant Luna's initiation of the traffic stop:

        ... The plaintiff wondered a thousand reasons why
        Luna had stopped his vehicle. No law was violated and
        Plaintiff operated himself in a lawful manner.
        Plaintiff thought of the environment, the type of car
        he was in, and the look on Luna's face back at the stop
        sign. The anger, the envy, the hate, the pursuit to

6

harass black people were written all over Luna's face.

WHY ARE YOU STOPPING ME OFFICER? Said Plaintiff.  I wasn't violating the law, you don't have any legit reason for pulling me over, IS THIS RACIALLY MOTIVATED? said the Plaintiff, CAUSE YOU DIDN'T HAVE PROBABLE CAUSE TO STOP ME.

Luna ordered Plaintiff to produce his licence, registration and insurance.  Plaintiff gave Luna his licence but promised to sue for being stereotyped because of his race.  Plaintiff verbally defended himself by asserting his rights and pointing out Luna's infringement upon his rights.

Luna quickly discovered the Plaintiff was not the average black man ignorant of the law.  That Luna could not intimidate and run-over the Plaintiff through illegal police practice.  This made Luna want to create a situation to justify the vehicle stop and escape liability for racial discrimination[.]  Luna conjured up the seatbelt violation in hopes of a scapegoat. Luna accused Plaintiff of not wearing his seatbelt trying to justify the stop.

Plaintiff denied this allegation and indicated filing a lawsuit against Luna for harassment and stereotyping him because of his race. ...

[After plaintiff's arrest,] Plaintiff asserts that Luna admitted taking his $9,500 dollars while at the jail.  That Luna told Defendant Wilson County Judicial Commissioner that Plaintiff was a smart ass.  That Plaintiff was going to sue them for Racial Discrimination so don't give him a bond.  That nigger don't deserve his freedom, said Luna.

Based upon Luna's influence the commissioner held Plaintiff in jail without bond.  The Plaintiff is suing the Wilson County Judicial Commissioner that was working at the Wilson County Jail between 6:47 pm and 11:59 pm on April 22nd, 2005.

The Captain (or higher official) of that shift, known as Big John witnessed what was happening to Plaintiff.  After Luna left, Big John opened the holding cell door where Plaintiff was detained, and said that he (Big John) could not believe that

7

Plaintiff was <u>being held without bond for nothing</u>, for not signing a seatbelt citation.

Big John said to Plaintiff, <u>this is a racial issue</u>, pointing at Plaintiff and Big John's skin. They're wrong, John continued. Just hang in there I'm gonna talk with the <u>next shift</u> commissioner and try to get you out of here, see if he'll give you a bond. Plaintiff said thank you, I appreciate it. ...

(<u>Id.</u> at ¶¶ 4-8, 21-24)(emphasis in original)

Plaintiff's brief in response to the summary judgment motion and his declaration in support (Docket Entry Nos. 19, 20) are even more specific on the subject of defendant Luna's motives. In particular, plaintiff testifies in his declaration as follows:

... On the date of April 24th, 2005, defendant Luna was out patrolling the area looking for black people to harass and pick on.

The defendant Luna spotted the Plaintiff and decided to stop his vehicle because he was a black man[.] The defendant Luna stopped his vehicle and walked up to the Plaintiff to start trouble[.] To make a long story short, Luna tried to intimidate Plaintiff with his authority and race in order to perform the unnecessary interference [with] Plaintiff['s] normal routine.

The Plaintiff pointed out Luna's error of pulling him over without probable cause and because of his race[.] Luna's body language and facial characteristics indicated white supremacy and hatred of the Plaintiff because of his race and because he dared to open his mouth and speak out against Luna's infringement of his rights[.] Plaintiff asserted filing a lawsuit som

Shortly thereafter, Luna harassed the Plaintiff and accused him of not wearing a seatbelt because Luna learned that Plaintiff was knowledgeable of the law. Luna had completely invented the seatbelt allegation as a way to make it seem like he wasn't trying to pull Plaintiff over because of race.

8

. . .

> The Plaintiff was, in fact, taken to the Wilson
> County Jail and held without bail by the judicial
> commissioner, but only at the request and influence of
> defendant Luna, who, told the commissioner not to give
> the Plaintiff's black ass a bond, that nigger don't
> deserve his freedom...

(Docket Entry No. 20 at 2-3) Plaintiff further declares that

"Big John" witnessed this discrimination by defendant Luna and

the Commissioner, and that the next shift Commissioner, named

Hankins, released plaintiff on a personal recognizance bond after

consulting with "Big John." (<u>Id.</u> at 3)

### C. <u>Conclusions of Law</u>

<u>Qualified Immunity</u>. Defendants have pled qualified immunity

in defense of the claims against them for money damages. The

U.S. Supreme Court has held that "government officials performing

discretionary functions are shielded from liability for civil

damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a

reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457

U.S. 800, 818 (1982). The right the official is alleged to have

violated must be defined in a particularized sense, relevant to

the circumstances confronting the officer. <u>Anderson v.

Creighton</u>, 483 U.S. 635, 640 (1986). In the context of the

Fourth Amendment, "it is inevitable that law enforcement officers

will in some cases reasonably but mistakenly conclude that

probable cause is present, and ... should not be held personally

9

liable" in such cases. <u>Id.</u> at 641.

Qualified immunity "sweeps broadly, affording [government officials] 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Scott v. Clay County, Tenn.</u>, 205 F.3d 867, 873 n.9 (6th Cir. 2000)(<u>quoting</u> <u>Sova v. City of Mt. Pleasant</u>, 142 F.3d 898, 902 (6th Cir. 1998)). A plaintiff can overcome this affirmative defense only by showing that (1) the defendant violated his constitutional or statutory rights and (2) the right at issue was sufficiently clear that a reasonable officer would have understood that what he was doing violated that right. <u>Bouggess v. Mattingly</u>, 482 F.3d 886, 887 (6th Cir. 2007).

In this case, the merits of the Fourth Amendment claim are "'inexorably intertwined' with the issue of qualified immunity," in that a finding of defendants' objective reasonableness will establish both the immunity defense and success on the merits; therefore, it is appropriate to "review the merits of the question directly, applying Rule 56 criteria, to determine whether plaintiff has made out a claim of constitutional breach at all." <u>Morales v. Ramirez</u>, 906 F.2d 784, 787-88 (1st Cir. 1990). As explained below, inasmuch as plaintiff has not shown any triable issue as to the violation of his federal constitutional rights, the undersigned concludes that defendants are protected from § 1983 liability for damages in

10

their individual capacities.[1]

*The Alleged Discrimination*.  To begin with, while plaintiff was allowed to amend his complaint in the absence of opposition by the defendants, it is clear to the undersigned that his new allegations and declaration testimony concerning defendant Luna's discriminatory intent and his racially motivated stop of

---

[1]As noted above, one of the reasons supporting plaintiff's motion to amend his complaint was his desire to allege official capacity claims against defendants Luna and Kelley, basically owing to the fact that their alleged misdeeds were committed during the course and scope of their employment as police officers for the city of Lebanon.  However, plaintiff misapprehends the nature of official capacity claims and the requirements for their substantiation, as aptly summarized by the district court in Anderson v. City of Monroe, 2006 WL 2077596, at *3 (E.D. Mich. July 24, 2006):

> § 1983 claims alleged against a city official acting in his official capacity are treated as an action alleged against the municipality itself.  *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992).  Plaintiffs must prove that [the defendant police officers' actions were] the product of an unconstitutional policy, custom, or practice of "deliberate indifference" to the plaintiffs' constitutional rights.  *See Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997)(citing *Canton v. Harris*, 489 U.S. 378, 389 (1989) and *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).  A municipality may not be held liable under § 1983 unless its deliberate action was the "moving force" behind the plaintiff's deprivation of federal rights.  *Id.* at 404. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Brown*, 520 U.S. at 405 (citing *Canton*, 489 U.S. at 391-92).

In light of this authority, plaintiff's allegation that the provisions of the Tennessee Code invoked by defendants (section 7-63-104 in particular) were the moving force behind their actions (Docket Entry No. 23 at 10; Docket Entry No. 19 at 7) is patently insufficient to support a claim for damages against the city of Lebanon.  The fact that state law was the moving force behind a police officer's actions merely makes that officer a proper defendant under § 1983. It is the deliberate action of the municipality itself -- either through the actions of its policymaking officials, or through the execution by lesser officials of its policies, customs, or practices -- which must be the moving force behind the alleged deprivation of constitutional rights in order for that municipality to be a proper defendant under § 1983.  Even if the amended complaint were very liberally construed to assert an equal protection claim that it was municipal custom or policy to selectively enforce the state traffic and citation laws against African-Americans, plaintiff has adduced no evidence whatsoever in support of such a claim.

11

plaintiff's vehicle are completely unfounded in the context of these summary judgment proceedings. Plaintiff has raised a Fourth Amendment challenge to the traffic stop at issue here, based in part on his consistent assertion that he was in fact wearing his seatbelt at all relevant times, and in part on his new allegations of racial profiling. However, as stated by the U.S. Supreme Court in Whren v. U.S., 517 U.S. 806 (1996):

> We think [our] cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

Id. at 813; see also Stemler v. Florence, 126 F.3d 856, 872-73 (6th Cir. 1997)("While we have held that the possibility of a discriminatory motive does not affect the inquiry into the objective reasonableness of an arrest for the purposes of the Fourth Amendment, see United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993)(en banc), that case did nothing to question the long-established availability of a separate selective enforcement claim under the Equal Protection Clause.").

Moreover, plaintiff's inferences from defendant Luna's "body language and facial characteristics" are simply not deserving of perceptible weight in the summary judgment analysis,

but clearly appear to have been manufactured in response to defendants' motion. Such self-serving testimony could only be construed as creating a genuine issue over the reason for the traffic stop if the existence of Luna's racial animus were deemed a justifiable inference to be drawn in plaintiff's favor under the summary judgment standard of review, e.g., <u>Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich</u>, 959 F.2d 590, 592 (6th Cir. 1992), from his allegations of Luna's racial slurs and other involvement with the Wilson County Judicial Commissioner in the denial of plaintiff's bond. However, the undersigned does not view such an inference as justifiable, given that (1) the alleged discrimination is immaterial in the context of plaintiff's Fourth Amendment claim if the stop was also based on some objectively reasonable ground;[2] (2) plaintiff was in fact ticketed and subsequently prosecuted for a seatbelt violation, an offense which, though minor, provides sufficient reason to effectuate a traffic stop;[3] and (3) plaintiff has identified an eyewitness ("Big John") to the alleged discrimination by Luna, but has failed to procure any testimony or statement from such eyewitness, thus failing to substantiate his declared version of events at the jail sufficiently to support any inference of

_____

[2]<u>See</u> <u>also</u> <u>Gaddis v. Redford Twp.</u>, 364 F.3d 763, 771 n.6 (6th Cir. 2004)("Next, police may make a stop when they have probable cause to believe a civil traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual.").

[3]<u>Infra</u> at 19.

13

discriminatory motive for the traffic stop.[4]

Finally, even if an equal protection claim had been properly alleged in the amended complaint, such claims must initially be supported by a *prima facie* showing of direct, circumstantial, or statistical evidence of racial discrimination, which plaintiff has failed to make in this case. See U.S. v. Avery, 137 F.3d 343, 355-58 (6th Cir. 1997).

In short, plaintiff's reliance on the allegations of his amended complaint and the suppositions of his self-serving declaration is insufficient to controvert the affidavit testimony and other exhibits submitted by defendants. As noted by the Supreme Court in Anderson v. Liberty Lobby, supra at 252, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Plaintiff simply has not made the evidentiary showing that is required to create a genuine, triable issue as to the legality of his traffic stop on which a reasonable jury could find in his favor. See also Matsushita, 475 U.S. at 586-87. No discovery materials were submitted in support of plaintiff's position, and nowhere in his papers does he allege or testify to facts from

_____

[4]Plaintiff also contends that the video recording of the encounter proves that he was wearing his seatbelt, though in fact the video is inconclusive on that point as it begins with defendant Luna pulling plaintiff over, after the point at which Luna says he saw plaintiff fastening his seatbelt. The recording is also inaudible and thus largely uninstructive.

14

which a reasonable jury could find that defendant Luna's asserted basis for pulling him over was entirely fabricated, and that the stop was instead solely motivated by racial animosity.  Indeed, the amended complaint reveals that, at the time Luna says he observed the violation, his patrol car was stopped at an intersection which plaintiff's car turned into, presumably at low speed, and that Luna observed plaintiff's car as it passed alongside of the patrol car (Docket Entry No. 23 at 2, ¶ 2).

The undersigned is mindful that "[s]ummary judgment is seldom appropriate in cases where the parties' intentions or states of mind are crucial elements of the claim because of the likelihood of self-serving testimony and the necessity for the factfinder's credibility determinations," <u>Ivy Street Corp. v. Alexander</u>, 922 F.2d 1432, 1437 (6th Cir. 1987), and that "[b]ecause an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 584-85 (1998).  Nevertheless, in looking beyond the pleadings to examine the record as a whole, <u>Matsushita</u>, 475 U.S. at 587, and in view of the stark contrast between the allegations of the original complaint and those of the amended complaint, as well as the other factors cited above, the undersigned must conclude that there is no genuine issue

15

regarding the reasonableness of the traffic stop for trial in this case.

*The State Court Proceedings*. As noted above, the custodial arrest of plaintiff was made upon plaintiff's refusal to sign the citation written by defendant Luna, pursuant to Tenn. Code Ann. § 7-63-104, which provides as follows:

> In the event the offender refuses to sign the agreement to appear in court and to waive the issuance and service upon the offender of a warrant, then it shall be the duty of the officer, in whose presence the offense is committed, forthwith to place the offender under arrest and take the offender before the proper authority, procure a warrant, serve the warrant upon the offender and book the offender as in other cases of violations. The authority issuing the warrant shall take bail from the accused for appearance in court for trial, or in lieu of bail, commit the offender to jail.

The record in this case reveals that defendants took plaintiff into custody and took him before the proper authority, but instead of then procuring a warrant for his arrest on the underlying charges, they mistakenly procured the issuance of a warrant charging plaintiff with a violation of § 7-63-104, which of course does not proscribe any conduct, nor was it found capable of sustaining the county's case on the underlying violations. Indeed, it appears that plaintiff was never formally charged with failure to observe the state's seatbelt, registration, and financial responsibility laws.

The proof submitted by defendants (Docket Entry No. 14 at 8; Docket Entry No. 33, ¶ 11) shows that the Wilson County

16

General Sessions Judge dismissed the warrant as defective on its face. Plaintiff alleges in his amended complaint that the state court in fact dismissed the underlying charges due to a lack of probable cause (Docket Entry No. 23, ¶¶ 27-31), and argues that defendants are barred from relitigating the probable cause issue by the doctrine of collateral estoppel (Docket Entry No. 19 at 4). However, even if plaintiff's allegations and argument were deemed sufficient to rebut defendants' proof, the application of collateral estoppel (or issue preclusion, as it is now known) is to be determined in accordance with state law. E.g., Haring v. Prosise, 462 U.S. 306, 312-14 (1983); see also U.S. v. Dominguez, 359 F.3d 839, 842 (6th Cir. 2004). In the state of Tennessee, collateral estoppel may only be used offensively (that is, by the plaintiff in a second suit), as it is sought to be used here, if the parties to the prior and current actions are identical. Trinity Indus., Inc. v. McKinnon Bridge Co., Inc., 77 S.W.3d 159, 184-85 (Tenn. Ct. App. 2001)(citing Beaty v. McGraw, 15 S.W.3d 819, 825-26 (Tenn. Ct. App. 1998)). This identity is lacking as between the state, which prosecuted (or attempted to prosecute) the criminal case against plaintiff, and the individual officers named as defendants in this civil action, since the officers had no personal stake in or control over the prior criminal proceeding, no reason to assert any claims or defenses therein, and no right to appeal the criminal adjudication. Wallace v.

17

Mamula, 1994 WL 389197, at *3 (6th Cir. July 26, 1994)(citing cases).

As to the proceedings against plaintiff in the Lebanon City Court,[5] the undersigned is unsure how those proceedings, as well as the effectuation of the judgment entered thereupon, could be deemed appropriate without a proper summons ever having been issued to plaintiff. As defendants point out, Tenn. Code Ann. § 40-7-118(c)(6) prohibits the issuance of a citation if the arrestee refuses to sign the citation, and it is unclear how plaintiff was properly haled into the Lebanon City Court if not by his agreement or the issuance and execution of a valid warrant.

*The Fourth Amendment*. The Fourth Amendment to the U.S. Constitution assures the right to be free from unreasonable searches and seizures by federal governmental officials, and this right is secured against state governmental intrusion by way of the Fourteenth Amendment. Stopping a car and detaining its occupants is clearly a seizure under the Fourth Amendment. U.S. v. Hensley, 469 U.S. 221, 226 (1985). The question of whether this initial detention amounts to an *unreasonable* seizure turns

---

[5]The evidence proffered by defendants in support of their testimony that the Lebanon City Court entered a judgment of forfeiture against plaintiff (Docket Entry No. 33, Exh. A) is entirely illegible.

18

on the existence of probable cause justifying the stop.[6]  The
Sixth Circuit has clarified that the proper inquiry is "whether
the police officer possessed probable cause ... to believe that a
traffic violation occurred, not whether a traffic violation in
fact occurred."  U.S. v. Sanford, 476 F.3d 391, 396 n.2 (6th Cir.
2007).

     "In the § 1983 context, the question of whether probable
cause existed is left for the jury, unless there is only one
reasonable determination possible."  Crockett v. Cumberland
College, 316 F.3d 571, 581 (6th Cir. 2003)(citing cases).
Defendant Luna has testified that he pulled plaintiff's car over
because he observed plaintiff driving without his seatbelt, and
subsequently fastening his seatbelt while driving (Docket Entry
No. 33 at ¶ 2).  As noted above, plaintiff has not properly
disputed the authenticity of defendant Luna's justification for
the stop, but has only maintained his innocence of the seatbelt
charge.  The observation of a seatbelt violation provides
probable cause justifying a traffic stop.  The courts of the
state of Tennessee, as well as the Sixth Circuit Court of Appeals
and even the U.S. Supreme Court, have so held.  Atwater v. City

_____

     [6]Sixth Circuit law appears to require a showing of probable cause, and
not the lesser showing of reasonable suspicion applicable to investigatory
stops, where the stop is made upon the belief that a misdemeanor criminal
offense has been completed (as opposed to the belief that such criminal
activity is ongoing).  U.S. v. Sanford, 476 F.3d 391, 394-95 (6th Cir.
2007)(quoting Gaddis, supra)).  The Tennessee seatbelt law at issue here is a
Class C Misdemeanor, Tenn. Code Ann. § 55-9-603(d)(1), and defendant Luna
acknowledges that plaintiff fastened his seatbelt while driving, before the
stop was effected (Docket Entry No. 23, ¶ 2).

of Lago Vista, 532 U.S. 318, 354 (2001); U.S. v. Draper, 22 Fed. Appx. 413, 414-15 (6th Cir. Oct. 2, 2001); State v. Sheffield, 2007 WL 1790444, at *4 (Tenn. Crim. App. June 21, 2007); State v. Beffrey, 2006 WL 3317088, at *5 (Tenn. Crim. App. Nov. 16, 2006); State v. Martin, 2003 WL 57311, at *4 (Tenn. Crim. App. Jan. 2, 2003). Because the existence of probable cause and the actual occurrence of a traffic violation are two separate issues, Sanford, 476 F.3d at 396 n.2, and in view of the authority cited above and the lack of any *genuine* dispute as to the predicate facts, the undersigned finds as a matter of law that the only reasonable determination here is that the detention of plaintiff's vehicle was supported by probable cause and therefore lawful.

Subsequent to this initial detention, plaintiff was evidently ordered to turn off the car's ignition and exit the vehicle, which orders are alleged to amount to an additional unreasonable seizure. (Docket Entry No. 23 at 3, ¶¶ 11, 12; at 7-8, ¶¶ 1, 2) However, it is clear that such additional intrusions on plaintiff's liberty are *de minimis*, and do not convert the valid traffic stop into an unreasonable seizure. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977); U.S. v. Flynn, 204 Fed. Appx. 23, 24 (D.C. Cir. Sept. 28, 2006).

Plaintiff appears to concede that he was unable to produce a copy of his vehicle registration or any proof of

insurance, and clearly he declined to sign the citation written by defendant Luna. (Docket Entry No. 23 at ¶¶ 13, 15) Plaintiff alleges that he cited the Sixth Amendment in refusing to sign the citation (id. at ¶ 15); however, the Sixth Amendment right to counsel does not attach until adversary judicial proceedings begin. E.g., Kirby v. Illinois, 406 U.S. 682, 688 (1972). There was clearly probable cause to arrest plaintiff for the underlying traffic violations, and his refusal to sign the citation in lieu of custodial arrest triggered defendants' statutory duty to take him into custody for the purposes of obtaining a warrant for such an arrest on the underlying charges. Tenn. Code Ann. § 7-63-104.

Plaintiff further alleges that defendant Luna illegally searched the interior of his car without plaintiff's consent, after arresting plaintiff and placing him in the patrol car. (Docket Entry No. 23 at ¶¶ 16, 17) However, it is clear that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460 (1981). In his amended complaint, plaintiff does not appear to allege a constitutional violation in his custodial arrest, but appears to claim under the state law of false arrest. (Docket Entry No. 23 at 8) In any event, it is clear on this summary judgment record that the warrantless arrest was reasonable under the Fourth

Amendment.  See Atwater, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").  While the "search incident to arrest" rule of Belton has been widely criticized for its overbreadth, it is nonetheless fully applicable and binding here.  Accordingly, the alleged search of the passenger compartment of plaintiff's car was not unlawful.

Finally, plaintiff has alleged "aggravated robbery" by defendant Luna upon the taking of $9,500.00 from the front seat of plaintiff's vehicle.  (Docket Entry No. 23 at 4, ¶ 17)  To the extent that this claim could be deemed to arise under the Fourth Amendment as an unreasonable seizure, it would be unfounded and lacking in merit since plaintiff has failed to support the allegation (which was noticeably absent from his original complaint) with any proof whatsoever, and defendant Luna has testified in his affidavit that he did not in fact remove any amount of money from plaintiff's vehicle (Docket Entry No. 33 at ¶ 13).

*State Law Claims*.  In the absence of any viable claim to an underlying constitutional violation redressible under § 1983,[7]

_____

[7]While plaintiff's federal constitutional rights may arguably be implicated by his allegations and declaration testimony that he was falsely imprisoned and unjustifiably refused bond by the first Wilson County Judicial Commissioner at defendant Luna's behest, see, e.g., Bunyon v. Burke County, 285 F.Supp.2d 1310, 1320-22 (S.D. Ga. 2003)(analyzing similar claims in

22

plaintiff's amended complaint can also be read to allege claims
for false arrest, false imprisonment/abuse of process, and
malicious prosecution under state common law.  See generally
Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669 (6th Cir.
2005).  Plaintiff likewise alleges civil rights intimidation
under state law, as well as violations of the Tennessee
Constitution.  In defense of the abuse of process claim,
defendants have raised their immunity under the Tennessee
Governmental Tort Liability Act of 1973, Tenn. Code Ann. §§ 29-

---

context of due process), plaintiff has not pled these claims as such.  Rather,
plaintiff has specifically alleged that defendants are liable for abuse of
process because they deprived him of his freedom "without just cause" and
"because they had no grounds to base their actions against Plaintiff."
(Docket Entry No. 23 at 9)  This count of plaintiff's amended complaint
concludes by characterizing the alleged abuse of process as "based on race and
to strike fear in Plaintiff for exercising his First Amendment rights[,]
and/or for negligent acts[.]"  (Id.)  While plaintiff thus characterizes his
detention without bond as unjustified and retaliatory, the undersigned
construes these allegations of intentional and/or negligent acts as matters in
which state law predominates.  Though the allegation that the denial of bond
was in response to his threats to sue for discrimination appears to at least
state a claim for First Amendment retaliation, see Ashley v. Seamon, 32 Fed.
Appx. 747, 749-50 (7th Cir. Feb. 4, 2002), this claim must fail for lack of
evidence sufficient to meet plaintiff's summary judgment burden, particularly
when this lack of proof is viewed in light of: plaintiff's failure to
controvert defendants' proof that he refused to provide the Commissioner with
information as to his residence (Docket Entry No. 14 at 3, 7); his own
admission that he refused to divulge such information to defendant Luna,
beyond referring him to the address on his driver's license (Docket Entry No.
23 at 3, ¶ 9); and, his failure to produce any evidence from the alleged
eyewitness to Luna's retaliatory animus (see Docket Entry No. 23 at 5, ¶ 23).
Such information regarding residence appears to be of paramount importance to
the bond determination under state statute (though such considerations only
obtain if the arrestee has been "charged with a bailable offense" in the first
place).  Tenn. Code Ann. § 40-11-115.  Thus, the extent of defendants'
negligent or otherwise unlawful conduct in detaining plaintiff in the Wilson
County Jail must be measured by reference to state law.  Any claim that this
detention violated plaintiff's federal constitutional rights has been either
inadequately pled or insufficiently supported to survive summary judgment, in
the undersigned's view.

23

20-101 et seq.[8]  In short, state law clearly predominates over the remaining matters at issue in this case.  Therefore, in the event that the undersigned's recommendations on the federal constitutional issues are adopted, it is recommended that the case be remanded to the Wilson County Circuit Court for adjudication of the state law issues, pursuant to 28 U.S.C. § 1441(c).[9]  Such a remand would appear particularly appropriate in light of the confusion surrounding the related state criminal proceedings against plaintiff, as well as the uncertain status of his case against the Wilson County Judicial Commissioner.[10,11]

----

[8]Similarly, though not cited by defendants, Tenn. Code Ann. § 40-7-118(j) provides that "[a]n officer who, on the basis of facts reasonably known or reasonably believed to exist, determines that a citation cannot be issued because [e.g., the subject refuses to sign the citation] shall not be subject to civil or criminal liability for false arrest, false imprisonment or unlawful detention."

[9]This section provides that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

[10]Plaintiff accomplished service of process on this defendant on September 27, 2006, in conjunction with the filing of his amended complaint. (Docket Entry Nos. 27, 28)  While the Wilson County Judicial Commissioner has made no appearance on this record, the Clerk of this Court denied plaintiff's motion for entry of default on December 4, 2006 (Docket Entry No. 39).  There has since been no further activity in this case with respect to that defendant.

[11]It appears from a review of the paper file that the Clerk's Office received a submission from plaintiff on March 12, 2007 (though that submission listed "Steve Hannah #370933" in the return address), which included a summons addressed to one David A. Patterson, as well as a pleading entitled "Supplemental Complaint" which lacks any certificate of service upon the opposing parties.  This document was never filed, nor was the accompanying summons issued, in keeping with the repeated warnings to plaintiff that any filing not bearing a certificate of service would be returned and/or stricken from the record (Docket Entry No. 4 at 2; Docket Entry No. 8 at 1).  In this Supplemental Complaint, plaintiff identifies David A. Patterson as a former

24

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that defendants' renewed motion for summary judgment be GRANTED in part, that plaintiff's federal constitutional claims be DISMISSED with prejudice, and that the remaining state law claims be REMANDED to the Circuit Court for Wilson County, Tennessee, pursuant to 28 U.S.C. § 1441(c).

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

---

Putnam County prosecutor who conspired with Jon Jenkins, the Wilson County Judicial Commissioner, to hold plaintiff without bond, to falsely arrest and incarcerate him, and to otherwise hinder his legal remedies and punish him for suing, among other things. The pleading also seeks to add Mr. Patterson as a defendant and supplement the false imprisonment claim against the Wilson County Judicial Commissioner, which the state court may be inclined to allow upon proper service of the pleading.

Case 3:06-cv-00538   Document 41   Filed 08/13/07   Page 25 of 26 PageID #: 214

**ENTERED** this 13th day of August, 2007.

         s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE

Case 3:06-cv-00538   Document 41   Filed 08/13/07   Page 26 of 26 PageID #: 215